PASSAIC COUNTY COURT OF COMMON PLEAS.

SIMON GLICK, PETITIONER-APPELLEE, v. WRIGHT AERO-
NAUTICAL CORP., RESPONDENT-APPELLANT.

Decided June 14, 1945.

For the petitioner-appellee, *David Cohn*.

For the respondent-appellant, *John W. Taylor*.

MacLeod, C. P. J. A claim petition was filed in the Workmen's Compensation Bureau, on September 28th, 1942, in which petitioner-appellee, hereinafter referred to as petitioner, alleged that he suffered injury as a result of an accident on June 3d, 1942, at 5 :00 A. M., which accident allegedly occurred while he was working on a polishing machine. Issue was joined by respondent filing an answer denying the allegations of said petition and the issues thereafter came duly on to be heard by the Workmen's Compensation Bureau and an award of compensation benefits was made in favor of petitioner, as more fully appears from the determination of facts and rule for judgment entered by Deputy Commissioner John J. Stahl, dated August 22d, 1944.

Thereafter an appeal, from the aforesaid determination of facts and rule for judgment, was duly taken to this court by respondent-appellant, hereinafter referred to as respondent, and the same came on for hearing before me, the matter being submitted to the court on the transcript of the record and testimony and on briefs, submitted by counsel for the respective parties.

According to petitioner's testimony he was employed by respondent on May 11th, 1942, and thereafter worked approximately eleven weeks as a polisher. He claims that the machine, on which he worked, vibrated excessively. According to petitioner, on June 3d, 1942, he "was polishing a long piece of steel known as an articulating rod, * * * and there was a certain jam which caused this piece of metal to slip out of my hand and strike me on the back of the hand." This rod is described as having been twelve inches long and weighed six pounds. Petitioner testified that he was caused to stop work immediately; that he immediately reported the

incident to his foreman "because I lost all sensation in the hand" and that ten minutes later he went to the plant hospital and was seen by Dr. Barlow, the company doctor, the following day. Petitioner denied any "disability or involvement or discomfort" in his left hand or fingers before the described incident of June 3d, 1942. He further testified that he started to lose work "right after the accident" but, subsequently, on cross-examination it was developed that he did not lose time until "about July sometime." Again, he stated that he could not tell when his hand caused him to stop work. According to the formal claim petition, prepared by petitioner under oath, he did not start to lose time until July 28th.

Cross-examined as to the statements made by him at an informal hearing of his case had in the Workmen's Compensation Bureau before Referee Mobius, on August 26th, 1942, petitioner insisted that he told Mr. Mobius the same story as related on his direct examination. He also admitted giving a written statement on July 9th, 1942 (*Exhibit R-1*) wherein he said, "I believe the condition is due to continuous strain on finger while polishing."

Dr. Hirschberg, petitioner's medical witness, in answer to a hypothetical question asked by petitioner's attorney, indicated that it was his opinion that petitioner had suffered a median neuritis of the left hand due to the alleged blow to the back of petitioner's left hand, by reason of the aforesaid metal rod striking it. As to whether or not this condition could be caused by continuous vibration he said "* * * just vibration I wouldn't say that in itself." In any event, the history given Dr. Hirschberg by petitioner was that he had had a blow to his hand. Dr. Harry Yolken, also for petitioner, stated "* * * this man sustained a trauma to the median nerve resulting in a median nerve neuritis * * *," and, when asked to describe the "accident" to which he attributed petitioner's condition, said, "I have in my history that a piece of metal came up and hit his hand." Asked further if he attributed petitioner's condition to the vibration of the machine on which he worked, he replied, "No, a piece of the machine came up and hit his hand, traumatized his hand."

For respondent, Dr. Frank A. Barlow, director of respondent's medical department, testified he examined petitioner August 3d, 1942, at which time he was given a history by petitioner that the condition complained of "* * * was due to continuous strain on his fingers while polishing," and he made a diagnosis of median nerve neuritis. It was his opinion that petitioner's condition was the usual "* * * result of using the hand in that particular type of work" and was "occupational." Dr. Barlow testified that median nerve neuritis is caused only by indirect trauma over a long period of time.

Respondent's only other witness, William Seymour, testified that he was present at the informal hearing had before Referee Mobius on August 26th, 1942. According to this witness, petitioner told Mr. Mobius that he had been working on the polishing job for two weeks, prior to June 1st, 1942, and "* * * got cramps in his hand and complained to his foreman who merely told him that was a common complaint due to the type of work he did." Seymour denied that petitioner told Mr. Mobius that he had been struck on the back of his left hand by a piece of metal.

Two weeks after the case was closed and taken under advisement by the Deputy Commissioner, petitioner moved to amend his petition "to conform to the proofs offered * * * by the respondent, as to the time and place of the accident alleged by the petitioner herein, and * * * will ask for an order permitting the amendment of said formal petition, to establish the report of an accident on May 19th, 1942." The amendment was allowed over the objection of respondent.

The learned Deputy Commissioner in awarding petitioner compensation benefits determined "* * * that the specific incident of June 3d, 1942, did not cause the present nerve injury described by petitioner and his physicians but was caused by the repeated jarring of the petitioner's hand in the work he engaged * * * that while working for the respondent in May, 1942, * * * that the petitioner's left hand was injured while operating a polishing machine which * * * produced repeated trauma to his hand and jarring thereof * * *." Thus an award predicated on neither the original nor amended petition.

After a careful review of the testimony, I am fully convinced that petitioner's testimony is unworthy of belief. Petitioner's testimony is unlike the story told by him to Referee Mobius; it is unlike the story told by him in his written statement of June 9th, 1942; it is unlike the story related by him to Dr. Barlow, the treating physician, and is further unlike the story related by him to his own Dr. Hirschberg. Apparently he is willing to tell a different story at each "drop of the hat," and fits the story of the moment to his own personal purposes and interest.

Claim is made that the finding of the Deputy Commissioner is supported by *Exhibit R-1*. *Exhibit R-1* in essence is a statement made by petitioner on July 9th, 1942, which was abandoned by him at the time of trial in the hope that his interests would best be served by a different story, not only abandoned but denied on cross-examination. It was only when his testimony, that he had been struck on the back of his left hand by a six pound piece of metal, was demonstrated unworthy of belief, and then only two weeks, after the case had been submitted to the court for determination that he sought leave to amend his claim to take advantage of his self-serving declaration of July 9th, 1942. In any event, *Exhibit R-1* does not disclose the occurrence of an injury by "accident."

The burden of proof is upon petitioner to prove his condition is due to a compensable accident and an "accident" can not be inferred from symptoms alone. Dr. Barlow, the attending physician, found petitioner's condition to be "occupational" and one which from common experience is visited, in the usual course of work, upon persons engaged in petitioner's occupation.

Our Court of Errors and Appeals in *Bollinger* v. *Wagaraw Building Supply Co.*, 122 *N. J. L.* 512; 6 *Atl. Rep.* (2*d*) 396, said:

"An occupational disease is one that from common experience is visited upon persons engaged in a particular occupation, in the usual course of events. It is one that is incidental to the employment itself, *e. g.*, painters become affected with lead colic or lead poisoning; telephone operators de-

velop ear trouble; phosphorous poisoning is common to those who work in the manufacture of fire works. These examples might be multiplied. In such instances they are injuries or diseases common to workers in those particular trades and manifestly, do not usually arise by accident as the term 'accident' is commonly understood. Such diseases are not compensable unless made so by statute. *R. S.* 34:15–31; *N. J. S. A.* 34:15–31."

In determining whether or not a physical condition, injury or otherwise, is compensable, the test established in the Bollinger case, *supra,* is,

"We have long held the view that an accident is 'an unlooked for or untoward event which was not expected or designed' or 'an unintended or unexpected occurrence which produced hurt or loss.' *Bryant* v. *Fissell, supra* [84 *N. J. L.* 72; 86 *Atl. Rep.* 460] ; *Ismay* v. *Williamson* (1908), *A. C. (Eng.)* 437, L. J. P. C. N. * * *"

Our Supreme Court in *Liondale Bleach Works* v. *Riker,* 85 *N. J. L.* 426; 89 *Atl. Rep.* 929, said, "The English courts seem at last to have settled that where no specific time or occasion can be fixed upon as the time when the alleged accident happened, there is no injury by accident."

In *Smith* v. *International High &c., Co.,* 98 *N. J. L.* 574; 120 *Atl. Rep.* 188, the Court of Errors and Appeals said, "Where no specific time can be fixed when an accident is claimed to have occurred—there is no accident within the meaning of the Compensation Act."

Cases in other states, holding that injuries resulting through mere continuance at a task, where there is no sudden or violent event producing at the time injury, are not compensable, are: *Young* v. *Melrose Granite Co.* (1922), 152 *Minn.* 512; 189 *N. W. Rep.* 426; 29 *A. L. R.* 506; *Industrial Commission* v. *Borchert* (1934), 49 *Ohio App.* 5; 194 *N. E. Rep.* 881; *Industrial Commission* v. *Auler* (1934), 49 *Ohio App.* 12; 194 *N. E. Rep.* 887; *Riehl* v. *Industrial Commission* (1935), 32 *N. E. Rep.* (2d) 439.

I am convinced that the term "injury" as used in the Workmen's Compensation Act, *N. J. S. A.* 34:15–1, *et seq.,* comprehends only such injuries as are accidental in origin

and cause and not such conditions as are regularly expected as the result of a person doing his regular work in the regular way without the intervention of an undesigned, unintended or unexpected occurrence.

It appears from the evidence and I so find that petitioner's condition, for which he seeks compensation benefits, is an occupational one and not the result of an unlooked for or untoward event, which was not expected or designed. Being an expected and usual result of the regular performance of his task, in the regular way, I find that petitioner did not suffer injury by "accident." Dr. Barlow, now serving in the Armed Forces, was the attending physician and there is nothing in the evidence from which this court can conclude that his testimony is other than credible.

It is well established that where the attending physician refuses to relate a condition to an "accident" there is no basis for any inference to that effect by the court, *Reimers* v. *Proctor Pub. Co.,* 85 *N. J. L.* 441; 89 *Atl. Rep.* 931; *Krapowitch* v. *Public Service Railway Co.,* 3 *N. J. Mis. R.* 932; *Kalesavich* v. *U. S. Metals Refining Co.,* 7 *Id.* 771; *Markiewicz* v. *International Milk Co.,* 19 *Id.* 57; 17 *Atl. Rep. (2d)* 158.

Dr. Barlow, being the attending physician, is the physician best able to express an opinion as to the cause of petitioner's condition and having refused to relate petitioner's disability to an "accident," in addition to having expressed the opinion that it is "occupational," there is no basis for the determination of the Deputy Commissioner that petitioner's condition is due to an "accident" and there is no basis for any such inference to that effect by this court. It is interesting to note that the medical experts produced by petitioner were given every reason to believe that petitioner's condition was due to a blow to the back of his left hand and that it was on that hypothesis that they expressed opinions relating petitioner's condition to his employment.

Petitioner, under oath, charged the onset of his present condition to a definite occurrence on June 3d, 1942, to wit, a blow to the back of his left hand by reason of a substantial piece of metal striking his hand; he charged further that he

was without any discomfort or complaints respecting his left hand prior to that specific incident; that his lost time immediately began thereafter; that it was that incident that he reported to his foreman and that it was that incident which compelled him to seek medical care. To hold that his condition was due to some other cause is not understandable unless it is determined that petitioner's testimony regarding the alleged specific incident of June 3d was a fabrication. I so find. Determining as I do that the testimony of petitioner is unworthy of belief and that the testimony at best establishes a non-compensable occupational condition, within the meaning and provisions of our Workmen's Compensation Act, since the repeated trauma, due the constant vibration of his machine—a condition anticipated to occur from the common experience visited upon persons engaged in similar work, in the usual course of events, and for the further reasons expressed above,

It is on this 14th day of June, 1945, ordered that the petition for compensation benefits be and hereby is dismissed and the determination of facts and rule for judgment, entered in the Workmen's Compensation Bureau, on August 22d, 1944, be and hereby is reversed and for nothing holden.